*In re* P.A.F., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. P.A.F., Respondent-Appellant).

Fifth District   No. 5—84—0674

Opinion filed July 11, 1985.

Randy E. Blue and John R. Abell, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Francis M. Howard, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

P.A.F., the respondent, aged 14, was charged in Madison County with attempted arson and criminal trespass to State-supported land. He was adjudicated delinquent on the criminal trespass charge and on the basis of this adjudication, the respondent's probation in two prior cases (two counts of burglary) was revoked. At the dispositional hearing the trial court sentenced respondent to the Department of Corrections, Juvenile Division, on the probation revocations and a concurrent term of five years' probation on the criminal trespass charge. On appeal, respondent contends that the trial court's imposition of imprisonment directly conflicts with the imposition of probation and that the commitment to the Department of Corrections, Juvenile Division, must accordingly be vacated.

The Juvenile Court Act provides:

"When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of Corrections if it finds that (a) his parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5–7; or (b) it is necessary to insure the protection of the public from the consequences of criminal activity of the delinquent." (Ill. Rev. Stat. 1983, ch. 37, par. 705–10(1).)

In sentencing the defendant to the Department of Corrections, Juvenile Division, on the probation revocation charges, the trial court found the respondent's parents were unfit and also that the public needed to be protected from the respondent's delinquent behavior. At the same time, the court placed the respondent on a concurrent term of five years' probation in the custody of his parents on the criminal trespass charge. As a condition of this probation, the trial judge ordered the respondent to enroll in and attend the Uniform Delinquency Intervention Service Program (U.D.I.S.) when he was released from the Department of Corrections.

Respondent argues that these dispositions directly conflict with each other. Respondent contends that if in fact the court deemed his parents to be unfit, it had the authority to order a transfer of custody under the provisions of section 5–7 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705–7). Here, argues the respondent, the court apparently found that his parents were not so unfit as to justify such a change of custody but were unfit enough to sanction his im-

prisonment. Respondent argues further that the public's need to be protected by his incarceration is fundamentally inconsistent with placing him on probation. Citing *People v. Merz* (1984), 122 Ill. App. 3d 972, 461 N.E.2d 1380, the respondent argues that when the reason a trial court gives for a disposition conflicts with specific findings which would support a less harsh disposition, the less harsh disposition should be imposed. Accordingly, respondent concludes that his sentence of commitment to the Department of Corrections, Juvenile Division, should be vacated.

In *Merz* the trial court imposed consecutive prison terms upon a defendant even though it specifically found that the defendant's conduct was the result of circumstances unlikely to recur and that defendant's character and attitude indicated that the defendant was unlikely to commit another crime. On appeal, the appellate court vacated this sentence and ordered the sentences imposed to run concurrently. In doing so, the court reasoned that the finding required to support a consecutive sentence was not supported by the trial court's finding that the defendant was unlikely to commit another crime. We find *Merz* to be distinguishable from the facts in the instant case. In *Merz* the court found that the defendant was not likely to commit another offense and that the circumstances surrounding the commission of the offense were not likely to recur. In the case at bar, the court specifically found that the respondent was continually getting into conflicts with the law, with every indication that such behavior was likely to continue in the future. While acknowledging that the respondent's parents could not control him, the court made it clear that the reason for the sentence of imprisonment was to insure the protection of the public, stating: "Certainly seems to me that it's necessary to ensure the protection of the public from the consequences of your criminal activity that I commit you to the Department of Corrections." We decline to find anything improper with the trial judge's decision to sentence the defendant to a concurrent term of probation on the criminal trespass charge. The imposition of the term of probation on the criminal trespass charge did not imply any finding inconsistent with the basis on which the trial judge imposed the term of incarceration. The trial judge was aware that the commitment to the Department of Corrections, Juvenile Division, on the probation revocation charges would take precedence over the sentence of probation and that it was quite likely that the respondent would be released prior to the time that the five-year concurrent term of probation had expired. The trial judge was also aware that prior attempts at probation with the respondent had failed miserably. Furthermore, the trial judge

wanted to continue to monitor the respondent's behavior and provide for further rehabilitation of the respondent once he was released from the Department of Corrections. In sentencing the respondent, the trial judge made the following remarks:

"I look over your record and for a kid who's only 14, you've done a real impressive job of endearing yourself to the people of the community, especially the police department—theft over, theft under, robbery—excuse me, robberies are dismissed, burglary, and then since then a disorderly conduct and criminal damage to state supported land. Actually, criminal trespass to state supported land, and you just keep misbehaving. I'm not quite sure what it is we have to do to get your attention. I'm sure when Judge Ferguson had a chance to talk to you on two separate occasions, he cautioned you. There's a line that's drawn that if you ever cross that line you get shipped *** Not only do you cross the line, you tap-dance across it, you jump up and down at it, and then you thumb your nose at us.

* * *

*** First, in 83—J—501, the Court will declare you to be a ward of the Court for what good that beating of that particular dead horse is going to be because you have already been down wardship before. In 83—J—143 and 83—J—167, the Court is going to commit you to the Department of Corrections. In 83—J—501, you will be given five years probation concurrent with the 83—J—167 and 83—J—143 commitments. As conditions of that probation, you will be required to enroll in and attend the U.D.I.S. Program when you're released from the Department of Corrections, if they'll take you.

[P.], I don't get any charge at all out of sending you to the Department of Corrections, but, you know, you must have thought the whole thing was a joke because you keep on getting in trouble, and you keep on getting in trouble. You play games with your parents, you play games in school, you play games on the street, and I think, that a dunk in the cold and chilling waters of the Department of Corrections may be good for your young soul as far as giving you a subtle hint that that's what awaits you when you grow up if you ever do make it that long *** I will do whatever I can once you get out of the Department of Corrections, and I anticipate that they won't take you there that long. I doubt if they will keep you there more than a year. I want you to attend the U.D.I.S. Program if it's at all humanly possible to get you into that because you—

once you get back on the street, young man, you're going to need training wheels.

\* \* \*

\*\*\* So, you're going to get shipped to the Department of Corrections. Court orders you committed there and when you get out, if there's anyway possible for this Court to make a recommendation to get you into the U.D.I.S. Program, I will do whatever I can to get you in there because, [P.], you're going to need help. There's no two ways about it."

By ordering the maximum term of probation to run concurrently with the imprisonment, the trial court was using every resource available to it to provide a vehicle for ordering enrollment in the Unified Delinquency Intervention Service Program, while at the same time providing the incarceration needed to protect the public and make an impression on the respondent, which apparently had not been made before. Based on defendant's prior record and his propensity to violate the law, irrespective of the consequences, we decline to disturb the trial court's sentencing of the defendant to a term in the Department of Corrections, Juvenile Division, and a concurrent five-year term of probation conditioned on enrollment in the Unified Delinquency Intervention Service Program.

For the reasons stated above, we affirm the disposition of the trial court.

Affirmed.

KARNS and HARRISON, JJ., concur.